UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOLAN WILEY, MONICA MELICIA, CATHERINE POWELL, BENJAMIN ROSS, MEGAN FRICKE, and ETHAN ALEXANDER,<br><br>                    Plaintiffs,<br><br>          v.<br><br>TOZZER LTD. D/B/A NIAGARA NYC AND LOVERS OF TODAY, LAPIZZA SHOP, INC., D/B/A 96 TEARS, BERLIN AND CABIN DOWN BELOW, JOSHUA YERINGTON A/K/A "JOHNNY T", JESSE MALIN, AND LAURA MCCARTHY, Jointly and Severally,<br><br>                    Defendants. | ECF CASE<br><br>No.: _____<br><br><u>COMPLAINT</u><br><br>JURY TRIAL DEMANDED |

Plaintiffs Nolan Wiley, Monica Melicia, Catherine Powell, Benjamin Ross, Megan Fricke and Ethan Alexander hereby allege through their attorneys, Lipsky Lowe LLP, as against Defendants Tozzer Ltd. d/b/a "Niagara NYC" and "Lovers of Today," Lapizza Shop, Inc. d/b/a "96 Tears," "Berlin," and "Cabin Down Below," Joshua Yerington a/k/a "Johnny T," Jesse Malin, and Laura McCarthy (collectively, "Defendants") as follows:

<u>NATURE OF THE ACTION</u>

1.      Plaintiffs allege that Defendants willfully violated the New York Labor Law by (i) failing to pay the minimum wage, (ii) unlawfully retaining gratuities, (iii) failing to provide the Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1, (iv) failing to provide an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment, (v) failing to timely pay wages.

2.      Plaintiffs allege that Defendants willfully violated the Fair Labor Standards Act ("FLSA") by (i) failing to pay the minimum wage, and (ii) unlawfully retaining gratuities.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367 as the facts supporting the federal and state claims are interrelated. In addition, the Court has jurisdiction over Plaintiffs' FLSA claims under 29 U.S.C. § 216(b).

4.      Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2).

5.      This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

### THE PARTIES

6.      Plaintiff Wiley is, at all relevant times, an adult individual residing in New York, New York.

7.      Plaintiff Melicia is, at all relevant times, an adult individual residing in Brooklyn, New York.

8.      Plaintiff Powell is, at all relevant times, an adult individual residing in New York, New York.

9.      Plaintiff Ross is, at all relevant times, an adult individual residing in Brooklyn, New York.

10.     Plaintiff Fricke is, at all relevant times, an adult individual residing in New York, New York.

11.     Plaintiff Alexander is, at all relevant times, an adult individual residing in Queens, New York.

12.     Upon information and belief, Defendant Tozzer, Ltd. is a domestic business corporation that is organized under New York law and is authorized to do business in the State of New York.

13.     Upon information and belief, Defendant LaPizza Shop, Inc. is a domestic business corporation that is organized under New York law and is authorized to do business in the State of New York.

14.     Defendant Tozzer, Ltd. is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. Defendant Tozzer, Ltd. is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000. These goods and materials that have been produced for and moved in commerce, which its employees have handled, including liquor, food, glassware, computers and beverages.

15.     Defendant LaPizza Shop, Inc. is, upon information and belief, an enterprise engaged in commerce or in the production of goods for commerce. Defendant LaPizza Shop, Inc. is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000. These goods and materials that have been produced for and

moved in commerce, which its employees have handled, including liquor, food, glassware, computers and beverages.

16.    Defendant Laura McCarthy, upon information and belief, owns, operates and controls Defendant Tozzer, Ltd. and LaPizza Shop's day-to-day operations and management and jointly employed Plaintiffs at all relevant times. She had the authority to hire and fire employees, set their work schedule and pay.

17.    Defendant Joshua Yerington a/k/a "Johnny T," upon information and belief, owns, operates and controls Defendant Tozzer, Ltd. and LaPizza Shop's day-to-day operations and management and jointly employed Plaintiffs at all relevant times. He had the authority to hire and fire employees, set their work schedule and pay.

18.    Defendant Jesse Malin, upon information and belief, owns, operates and controls Defendant Tozzer, Ltd. and LaPizza Shop's day-to-day operations and management and jointly employed Plaintiffs at all relevant times. He had the authority to hire and fire employees, set their work schedule and pay.

19.    Each Defendant, either directly or indirectly, hired Plaintiffs and other employees, fired other employees, controlled Plaintiffs' work schedules and employment conditions, determined his payment rate and method, and kept at least some records regarding his employment.

20.    At any given time, Defendants have and have had more than 11 employees.

21.    Defendants operated a single, integrated business enterprise that jointly employed Plaintiff.

## STATEMENT OF FACTS

Overview

22.    Defendants Laura McCarthy, Joshua Yerington a/k/a "Johnny T," and Jesse Malin jointly own, operate and manage multiple Manhattan bars that are located around the intersection of Avenue A and East 7th Street, including, but not limited to, Niagara NYC, Lovers of Today and Cabin Down Below (the "Avenue A Bars").

23.    Niagara NYC is open the following hours: Monday to Friday, 3:00 p.m. to 4:00 a.m.; and Saturday to Sunday, 2:00 p.m. to 4:00 a.m.

24.    Lovers of Today is open the following hours: Monday to Sunday, 5:00 p.m. to 4:00 a.m.

25.    Cabin Down Below is open the following hours: Thursday to Saturday, 10:00 p.m. to 2:00 a.m., with the bar sometimes staying open later if busy.

26.    Bartenders working at Niagara NYC and Lovers of Today regularly arrive 1 hour before it opens to prepare for service and stay at least 30 minutes after it closes to close down the bar.

27.    Bartenders at Cabin Down Below regularly arrive 30 minutes before it opens to prepare for service and stay 30 minutes after to close down the bar.

28.    Defendants employ, at any one time, approximately 26 bartenders, servers and barbacks that they rotate around the Avenue A Bars on an as needed basis.

29.    Defendants post one weekly work schedule that shows at which bar their bartenders, servers and barbacks will be working at the Avenue A Bars.

30.    Defendants centralize control of the Avenue A Bars.

31.     Defendants have a centralized system to share supplies for the Avenue A Bars: there are two pantry rooms and three refrigerators that services all of the Avenue A Bars; and these are located adjacent to Lovers of Today.

32.     Defendants rotate and share employees, equipment and supplies among the Avenue A Bars. For example, if one location is low on vodka, Defendants will move vodka from one bar to the other.

33.     An interrelation of operations exists among the Avenue A Bars.

34.     Defendants employed Barbara "Zoe" Lezcano as a manager who managed all of these locations.

35.     When Defendants Laura McCarthy, Joshua Yerington a/k/a "Johnny T," and Jesse Malin come to their bars, they often tell their employees what to do and how to do it. They will also sometimes call one of the employees working at the bars and yell at them what to do and how to do it.

36.     Defendants do not permit bartenders to take any breaks during their shift, including meal breaks.

Defendants' Compensation Policies

37.     Up until at least December 31, 2023, Defendants paid their bartenders $10.00 per hour.

38.     In paying their bartenders at $10.00, Defendants were claiming a tip credit against the statutory minimum wage.

39.     When one of Defendants' bartenders work at more than one of their bars in a pay period, they will receive a check from each bar that they worked at during that pay period.

40.     Defendants require their bartenders, servers and barbacks to pool their tips.

41.     Defendants' managers are part of the tip pool and these managers have the authority to hire and fire employees, set employees' work schedules, and assign them work. One of those managers is Kelley Swindall.

42.     Defendants do not remit all credit card tips to their bartenders. Defendants keep a portion of the credit card tips.

43.     Defendants automatically add a tip to orders with more than six drinks, without disclosing this tip to the customer.

44.     Defendants do not track how much in tips their employees receive.

45.     Defendants do not know whether their employees' tips plus hourly rate equals them being paid at least the statutory minimum wage.

Compensation and Scheduling

46.     Up until about November 2022, Defendants paid their bartenders every two weeks.

47.     By delaying payment to their bartenders, they were underpaid for the work they performed; they were deprived of money that they are owed and need; the value of the money, when eventually paid, is less than it would have been if they were timely paid; and they were not able to purchase everything they would have purchased if timely paid.

48.     Defendants do not pay their bartenders for every hour worked.

49.     When Defendants' bartenders arrive before their scheduled shift to begin setting up the bar, Defendants do not pay them for that time. This includes time organizing the bar, cleaning up the bar, cutting up garnishes, setting up the seating, stocking the bar and organizing the coat check room.

50.　　When Defendants' bartenders stay after their scheduled shift to close down the bar, Defendants do not pay them for that time. This includes time organizing the bar, cleaning up the bar, cutting up garnishes, breaking down the seating, stocking the bar and organizing the coat check room.

51.　　Defendants are aware that their bartenders are working before and after their scheduled shift because i) they clock in when they arrive and start working and clock out when they stop working, versus clocking in and out based on their scheduled shift, ii) they could not have performed their jobs without completing these pre-and post-shift activities, iii) they have complained about not being paid for all hours worked, iv) a manager regularly sees them working before and after their scheduled shifts, iv) the owners can watch via closed circuit tv.

52.　　As a result of this practice, Defendants are regularly not paying their bartenders for 30 minutes to 2 hours per week of compensable time.

53.　　Defendants would alter the bartenders' time records to subtract their pre- and post-shift activities.

54.　　Defendants' bartenders paystubs do not correctly reflect all of the hours that they worked as a consequence of Defendants altering their time records.

55.　　Defendants did not and do not provide bartenders, including Plaintiffs, with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

56.　　When hiring them and at no point during their employment have Defendants provided their bartenders the required Notice and Acknowledgment of Payrate and Payday under N.Y. Lab. Law § 195.1.

57.    Defendants' failure to provide their bartenders with the N.Y. Lab. Law § 195.1 notice and accurate wage statements deprived them of the information necessary for review their wages and hours worked and was a direct cause for their economic injury and, in fact, resulted in their wages being underpaid.

58.    If Defendants had complied with the N.Y. Lab. Law §§ 195.1 and 195.3 notices and wage statements, their bartenders would have been able to see that they were not being lawfully paid and would have been able to avoid underpayment of their wages.

59.    Defendants did not post at any of their bars an up-to-date poster advising Plaintiffs of their right to a minimum wage and overtime premium pay.

Staff Meetings

60.    Approximately three times a year, Defendants require their employees to attend staff meetings at Niagara NYC which last between 1 to 3 hours, but Defendants do not, until very recently, compensate their employees for these staff meetings.

61.    Defendants required Plaintiffs to hold a food handler's license and to receive TIPS Alcohol Safety training. This training is directly related to Plaintiffs' duties. Defendants did not pay Plaintiffs for this training.

62.    TIPS is not a government-mandated training program. It is a voluntary program provided by the New York State Liquor Authority.

63.    Defendants required Plaintiffs to attend sexual harassment training but did not pay for it. The training lasts about 1 hour.

Willful violations

64.     Having owned and operated numerous bars for many years, Defendants are familiar with and know what the Labor Law and FLSA require and prohibit, including having to compensate employees for all hours worked, having to compensate employees for mandatory training, and excluding managers from the tip pool.

65.     Defendants structured their compensation policies with the goal of reducing labor costs, versus complying with the FLSA and Labor Law.

66.     Defendants purposely misreported the hours worked on Plaintiffs' wage statements to, in part, try to conceal they were not paying Plaintiffs for all hours worked and to try to make litigation against them more difficult.

67.     On May 2, 2017, 3 employees of Defendants filed a complaint with the U.S. Department of Labor against one of the bars that Defendants own and operate: Sister Midnight, which is now known as Cabin Down Below.

68.     The DOL determined $12,040 is owed to the 3 employees.

69.     Defendants did not, upon information and belief, change their pay practices after the DOL determination that 3 employees are owed $12,040.

70.     When they work at multiple locations in one pay period, Defendants purposely give Plaintiffs multiple paychecks to make it difficult for them to determine whether they were being lawfully paid and thereby make it difficult for them to vindicate their statutory rights.

Defendants' Bartenders' Duties

71.     Defendants' bartenders are responsible for setting up for their shift, serving customers, cutting up garnishes, setting up the outdoor seating, organizing the bar by

moving bottles around to their appropriate location, cleaning their bar during their shift and closing up their bar after their shift.

72.    Defendants' bartenders are spending close to their entire shift performing physical labor.

73.    Defendants prohibit their bartenders from sitting during their shifts.

Plaintiff Wiley

Employment Period and Duties

74.    Defendants employed Plaintiff Wiley as a bartender from June 2021 to May 22, 2022.[1]

75.    Plaintiff Wiley worked as a bartender for Defendants at Lovers of Today, 96 Tears,[2] and Niagara NYC.

76.    As a bartender, Plaintiff Wiley's duties included making drinks, wiping down the bar, cleaning menus, and clearing used glassware.

77.    Defendants, in addition, required him to spend approximately 2 hours each workday performing non-tipped duties, including but not limited to, setting up the bar, taking payment, closing down the bar after his shift and cleaning.

78.    Plaintiff Wiley, in performing his duties, spent practically his entire shift doing physical labor.

Hours Worked

79.    From June 2021 to March 12, 2022, Plaintiff Wiley worked for Defendants 4 days per week: from 5:00 p.m. to 1:00 a.m. or 2:00 a.m. 2 days per week, from 1:00 to

---

[1] The date ranges are estimates based on Plaintiff's memory.
[2] Plaintiff Wiley worked at 96 Tears from in or about June 2021 through March 2022 when it operated under the name "Tompkins Square Bar."

9:00 p.m. 1 day per week, and from 4:00 p.m. to 9:00 p.m. or 10:00 p.m. 1 day per week, totaling 29 to 32 hours per week.

80.    During this time, Plaintiff Wiley was regularly required to perform approximately one hour of closing duties after his Thursday and Saturday night shifts, resulting in approximately two additional hours of work each week beyond his scheduled shifts. As a result, his actual hours worked per week increased to approximately 31 to 34 hours.

81.    From March 13, 2022 to May 22, 2022, Plaintiff Wiley worked for Defendants 4 days per week: from 9:00 p.m. to 4:00 a.m. or 5:00 a.m. 2 days per week, and from 4:00 p.m. to 9:00 p.m. or 10:00 p.m. 2 days per week, totaling 24 to 28 hours per week.

82.    During this time, Plaintiff Wiley was regularly required to perform approximately one hour of closing duties after his Tuesday and Thursday night shifts, resulting in approximately two additional hours of work each week beyond his scheduled shifts. As a result, his actual hours worked per week increased to approximately 26 to 30 hours.

<u>Compensation</u>

83.    Defendants paid Plaintiff Wiley $10.00 per hour.

84.    Defendants paid Plaintiff Wiley every two weeks.

85.    Defendants did not pay Plaintiff Wiley for his pre- and post-shift activities.

86.    Plaintiff Wiley clocked in and out when he started and stopped working.

87.    Plaintiff Wiley would not have been able to perform his bartending duties absent performing the pre- and post-shift work.

88.     Defendants altered Plaintiff Wiley's time records to subtract his pre- and post-shift activities.

89.     Defendants did not pay Plaintiff Wiley for attending the mandatory staff meetings.

90.     Defendants did not provide Plaintiff Wiley with the required Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1.

91.     Defendants did not provide Plaintiff Wiley with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

Plaintiff Melicia

Employment Period and Duties

92.     Defendants employed Plaintiff Melicia as a bartender from July 2022 to January 2023.[3]

93.     Plaintiff Melicia worked as a bartender for Defendants at Lovers of Today, Niagara NYC and Cabin Down Below.

94.     As a bartender, Plaintiff Melicia's duties included making drinks, wiping down the bar, cleaning menus, and clearing used glassware.

95.     Plaintiff Melicia, in performing her duties, spent practically her entire shift doing physical labor.

Hours Worked

96.     Plaintiff Melicia worked for Defendants 3 to 5 days per week, from 9:00pm to 4 a.m. each day, totaling 21 to 35 hours per week.

---

[3] The date ranges are estimates based on Plaintiff's memory.

97.    During this time, Plaintiff Melicia was routinely required to remain approximately 1 to 1.5 hours after the scheduled end of each shift to complete post-work tasks. As a result, her actual hours worked per week increased to approximately 24 to 42.5 hours, resulting in her working more than 40 hours per week at least twice per month.

Compensation

98.    Defendants paid Plaintiff Melicia $10.00 per hour.

99.    Defendants paid Plaintiff Melicia every two weeks.

100.    Defendants did not pay Plaintiff Melicia for her pre- and post-shift activities.

101.    Plaintiff Melicia clocked in and out when she started and stopped working.

102.    Plaintiff Melicia would not have been able to perform her bartending duties absent performing the pre- and post-shift work.

103.    Defendants altered Plaintiff Melicia's time records to subtract her pre- and post-shift activities.

104.    Upon information and belief, Defendants did not pay Plaintiff Melicia for attending mandatory staff meetings.

105.    Defendants did not provide Plaintiff Melicia with the required Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1.

106.    Defendants did not provide Plaintiff Melicia with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

<u>Plaintiff Powell</u>

    <u>Employment Period and Duties</u>

    107.    Defendants employed Plaintiff Powell as a bartender from June 2023 to January 2025.[4]

    108.    Plaintiff Powell worked as a bartender for Defendants at Lovers of Today.

    109.    Plaintiff Powell's duties included making drinks, wiping down the bar, cleaning menus, and clearing used glassware.

    110.    Plaintiff Powell, in performing her duties, spent practically her entire shift doing physical labor.

    <u>Hours Worked</u>

    111.    From June 2023 to January 2025, Plaintiff Powell worked for Defendants 3 days per week: from 4:00 p.m. to 10 p.m., totaling 18 hours per week.

    112.    During this time, Plaintiff Powell was regularly required to perform approximately 15 minutes of pre- or post-shift duties for each shift, resulting in approximately 45 additional minutes of work per week beyond her scheduled hours. As a result, her actual hours worked per week increased to approximately 18.75 hours.

    <u>Compensation</u>

    113.    Defendants paid Plaintiff Powell $10.00 per hour.

    114.    Defendants paid Plaintiff Powell every two weeks.

    115.    Defendants did not pay Plaintiff Powell for her pre- and post-shift activities.

    116.    Plaintiff Powell clocked in and out when she started and stopped working.

---

[4] The date ranges are estimates based on Plaintiff's memory.

117.    Plaintiff Powell would not have been able to perform her bartending duties absent performing the pre- and post-shift work.

118.    Defendants did not provide Plaintiff Powell with the required Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1.

119.    Defendants did not provide Plaintiff Powell with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

Plaintiff Ross

Employment Period and Duties

120.    Defendants employed Plaintiff Ross as a bartender from September 2022 to September 2023.[5]

121.    Plaintiff Ross worked as a bartender for Defendants at Lovers of Today, Cabin Down Below, 96 Tears, and Niagara NYC.

122.    Plaintiff Ross's duties included making drinks, wiping down the bar, cleaning menus, and clearing used glassware.

123.    Plaintiff Ross, in performing his duties, spent practically his entire shift doing physical labor.

Hours Worked

124.    From September 2022 through September 2023, Plaintiff Ross worked for Defendants 4 to 5 days per week: from 4:00 p.m. to 10 p.m. 2 days per week, and from 10:00 p.m. to 4 a.m. 2 to 3 days per week, totaling 24 to 30 hours per week.

---

[5] The date ranges are estimates based on Plaintiff's memory.

125.    During this time, Plaintiff Ross was routinely required to remain approximately 30 minutes beyond the scheduled end of his 10:00 p.m. to 4:00 a.m. shifts. As a result, his actual hours worked per week increased to approximately 25 to 31.5 hours.

Compensation

126.    Defendants paid Plaintiff Ross $10.00 per hour.

127.    Defendants paid Plaintiff Ross every two weeks.

128.    Defendants did not pay Plaintiff Ross for his pre- and post-shift activities.

129.    Plaintiff Ross clocked in and out when he started and stopped working.

130.    Plaintiff Ross would not have been able to perform his bartending duties absent performing the pre- and post-shift work.

131.    Defendants did not provide Plaintiff Ross with the required Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1.

132.    Defendants did not provide Plaintiff Ross with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

Plaintiff Fricke

Employment Period and Duties

133.    Defendants employed Plaintiff Fricke as a bartender from July 2024 to January 2025.[6]

134.    Plaintiff Fricke worked as a bartender for Defendants at Cabin Down Below, 96 Tears, and Niagara NYC.

135.    Plaintiff Fricke's duties included serving customers, taking drink orders, making drinks, wiping down the bar, cleaning menus, and clearing used glassware.

---

[6] The date ranges are estimates based on Plaintiff's memory.

136.     Plaintiff Fricke, in performing her duties, spent practically her entire shift doing physical labor.

Hours Worked

137.     From July 2024 to October 2024, Plaintiff Fricke worked for Defendants 5 days per week: on Sundays from 1:00 p.m. to 9:00 p.m.; on Tuesdays and Thursdays from 4:30 p.m. to 10:00 or 11:00 p.m., or on Thursdays from 9:00 p.m. to 4:00 a.m.; and on Fridays and Saturdays from 4:30 p.m. to 2:00 or 3:00 a.m., totaling approximately 38 to 42.5 hours per week.

138.     During this time, Plaintiff Fricke was routinely required to remain approximately 30 minutes to one hour beyond the scheduled end of her shifts that ended at 4:00 a.m., and approximately 15 minutes beyond the scheduled end of her other shifts. As a result, her actual hours worked per week increased to approximately 39.25 to 44.25 hours per week. Plaintiff Fricke regularly worked in excess of 40 hours per week, doing so at least once per month.

139.     From October 2024 to January 2025, Plaintiff Fricke worked for Defendants 5 days per week: on Sundays from 1:00 p.m. to 9:00 p.m.; on Tuesdays and Thursdays from 4:30 p.m. to 10:00 or 11:00 p.m., or on Thursdays from 9:00 p.m. to 4:00 a.m.; and on Fridays and Saturdays from 9:00 p.m. to 2:00 a.m. or 4:00 a.m., totaling approximately 29 to 35.5 hours per week.

140.     During this time, Plaintiff Fricke was routinely required to remain approximately 30 minutes to one hour beyond the scheduled end of her shifts that ended at 4:00 a.m., and approximately 15 minutes beyond the scheduled end of her other shifts. As

a result, her actual hours worked per week increased to approximately 30.25 to 37.25 hours per week.

Compensation

141.    Defendants paid Plaintiff Fricke $10.00 per hour.

142.    Defendants paid Plaintiff Fricke weekly.

143.    Defendants did not pay Plaintiff Fricke for her pre- and post-shift activities.

144.    Plaintiff Fricke clocked in and out when she started and stopped working.

145.    Plaintiff Fricke would not have been able to perform her bartending duties absent performing the pre- and post-shift work.

146.    Defendants did not provide Plaintiff Fricke with the required Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1.

147.    Defendants did not provide Plaintiff Fricke with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

Plaintiff Alexander

Employment Period and Duties

148.    Defendants employed Plaintiff Alexander as a bartender from August 2023 to June 2024.[7]

149.    Plaintiff Alexander worked as a bartender for Defendants at Cabin Down Below, 96 Tears, and Niagara NYC.

150.    Plaintiff Alexander's duties included making drinks, wiping down the bar, cleaning menus, and clearing used glassware.

---

[7] The date ranges are estimates based on Plaintiff's memory.

151.    Defendants, in addition, required him to spend approximately 1 to 2 hours each workday performing non-tipped duties, including but not limited to, setting up the bar, taking payment, closing down the bar after his shift and cleaning.

152.    Plaintiff Alexander, in performing his duties, spent practically his entire shift doing physical labor.

Hours Worked

153.    Plaintiff Alexander worked for Defendants 4 days per week: from 9:00 p.m. to 4:00 a.m. 2 days per week, from 4:00 p.m. to 4:00 a.m. 1 day per week, and from 8:00 p.m. to 4:00 a.m. 1 day per week, totaling 34 hours per week.

154.    During this time, Plaintiff Alexander regularly worked an additional 1 to 2 hours on three of his weekly shifts, and at times up to 3 additional hours, resulting in actual hours worked totaling approximately 37 to 43 hours per week. Plaintiff Alexander regularly worked more than 40 hours per week, doing so at least twice per month.

Compensation

155.    Defendants paid Plaintiff Alexander $10.00 per hour.

156.    Defendants paid Plaintiff Alexander every two weeks.

157.    Defendants did not pay Plaintiff Alexander for his pre- and post-shift activities.

158.    Plaintiff Alexander clocked in and out when he started and stopped working.

159.    Plaintiff Alexander would not have been able to perform his bartending duties absent performing the pre- and post-shift work.

160.    Defendants altered Plaintiff Alexander's time records to subtract his pre- and post-shift activities.

161.    Defendants did not provide Plaintiff Alexander with the required Notice and Acknowledgement of Payrate and Payday under N.Y. Lab. Law § 195.1.

162.    Defendants did not provide Plaintiff Alexander with an accurate wage statement under N.Y. Lab. Law § 195.3 with every wage payment.

<u>FIRST CAUSE OF ACTION</u>
UNLAWFUL RETENTION OF GRATIUITIES/UNLAWFUL WAGE DEDUCTIONS
UNDER THE FLSA
(On Behalf of Plaintiffs Melicia, Powell, Ross, Fricke and Alexander)

163.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

164.    Defendants employed Plaintiffs within the meaning of the FLSA.

165.    As employers within the meaning of the FLSA, Laura McCarthy, Joshua Yerington a/k/a "Johnny T," and Jesse Malin are personally liable for any FLSA violations.

166.    Defendants constitute one integrated enterprise under the FLSA.

167.    Defendants willfully violated 29 U.S.C. § 203(m)(2)(B) by unlawfully retaining a portion of Plaintiffs' gratuities. 29 U.S.C. §§ 203(m)(2)(B), 216(b) ("Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages.")

168.    Defendants made unlawful deductions and required kickbacks from Plaintiffs by deducting from Plaintiffs' tips that they received from customers.

169.    The deductions made from Plaintiffs' wages were not authorized nor required by law.

170. The deductions made from Plaintiffs' wages were not expressly authorized in writing by Plaintiffs and were not for their benefit.

171. Through their knowing or intentional efforts to permit unauthorized deductions form Plaintiffs' wages, Defendants willfully violated the FLSA. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35.

172. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, making their violations willful or reckless.

173. Defendants did not make a good faith effort to comply with the FLSA with respect to Plaintiffs' compensation.

174. Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover from Defendants unlawfully retained gratuities, statutory liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest and such other legal and equitable relief as this Court deems just and proper.

SECOND CAUSE OF ACTION
UNPAID OVERTIME
UNDER NEW YORK LABOR LAW
(On Behalf of Plaintiffs Melicia, Fricke and Alexander)

175. Plaintiffs reallege every preceding allegation as if set forth fully herein.

176. Defendants are "employers" under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiffs.

177. Under the Labor Law and supporting New York Statement Department of Labor Regulations, Defendants were required to pay Plaintiffs 1.5 times their regular rate of pay for all hours they worked in excess of 40 per workweek. 12 N.Y.C.R.R. § 142-2.2; N.Y. Lab. Law §§ 652, 650 *et seq.*

178.    Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor summarizing minimum wage provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. §§ 137-2.3, *et seq*.

179.    Defendants failed to make a good faith effort to comply with the Labor Law.

180.    Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiffs the correct amount of overtime wages.

181.    Due to Defendant's Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees, costs, pre and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
### FAILURE TO PAY THE MINIMUM WAGE
### UNDER THE NEW YORK LABOR LAW
#### (On Behalf of all Plaintiffs)

182.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

183.    Defendants are "employers" under N.Y. Lab. Law §§ 190, 196-d, 651(5), 652 and supporting New York State Department of Labor Regulations and employed Plaintiffs.

184.    Defendants constitute one integrated enterprise under the Labor Law.

185.    As employers within the meaning of the Labor Law, Laura McCarthy, Joshua Yerington a/k/a "Johnny T," and Jesse Malin are personally liable for any Labor Law violations.

186.    At all relevant times, Defendants were subject to the Minimum Wage Order for the Hospitality Industry promulgated by the New York State Department of Labor, 12 N.Y. C.R.R. Part 146.

187.    The wage payment provisions of Article 6 of the Labor Law and supporting New York State Department of Labor Regulations apply to Defendants and protect Plaintiffs.

188.    Under the Labor Law and supporting New York State Department of Labor Regulations, Defendants were required to pay Plaintiffs the statutory minimum wage.

189.    Upon information and belief, Defendants failed to post, in a conspicuous place upon their premises a notice issued by the New York State Department of Labor summarizing minimum wage provisions, violating the Labor Law and supporting New York State Department of Labor Regulations. 12 N.Y.C.R.R. §§ 137-2.3, *et seq.*

190.    Defendants paid Plaintiffs below the statutory minimum wage.

191.    Defendants were not eligible to take a tip credit and pay Plaintiffs below the statutory minimum wage under 12 N.Y.C.R.R. §§ 137-2.1, 2.2 and 12 N.Y.C.R.R. §§ 146-2.2, 2.9 because: (i) Defendants failed to pay them for all hours worked in violation of the Labor Law; (ii) Plaintiffs spent more than 20% of their time doing non-tipped work, and (iii) Defendants retained some of Plaintiffs' tips.

192.    Defendants are accordingly liable to Plaintiffs for the difference between the hourly rate at which they paid him and the statutory minimum wage.

193.    Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Plaintiffs the minimum wage.

194.    Due to Defendants' Labor Law violations, Plaintiffs are entitled to recover from Defendants unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

FOURTH CAUSE OF ACTION
OFF-THE-CLOCK WORK
UNDER THE NEW YORK LABOR LAW
(On Behalf of all Plaintiffs)

195.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

196.    Defendants failed to pay Plaintiffs for all of their compensable time, violating N.Y. Lab. Law § 663. This off-the-clock time includes Plaintiffs' pre- and post-shift activities and unpaid staff meetings.

197.    Due to Defendants' Labor Law violations, Plaintiffs are entitled to recover from Defendants unpaid wages, liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest. N.Y. Lab. Law § 663.

FIFTH CAUSE OF ACTION
FAILURE TO PROVIDE 195.1 NOTICE
UNDER THE NEW YORK LABOR LAW
(On Behalf of all Plaintiffs)

198.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

199.    Defendants willfully failed to supply Plaintiffs with the required Notice and Acknowledgement of Pay Rate and Payday under N.Y. Lab. Law § 195.1(a) within 10 business days of his first employment date.

200.    Due to Defendants' violations of N.Y. Lab. Law § 195.1, Plaintiffs are entitled to recover from Defendants $50.00 for each workday that the violations occurred or continue to occur, or a total of $5,000.00, reasonable attorneys' fees, costs, injunctive and declaratory relief. N.Y. Lab. Law § 198(1)-b (2016).

## SIXTH CAUSE OF ACTION
### FAILURE TO PROVIDE 195.3 WAGE STATEMENT
### UNDER THE NEW YORK LABOR LAW
(On Behalf of all Plaintiffs)

201.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

202.    Defendants willfully failed to supply Plaintiffs with the required accurate wage statements with every payment of wages, violating Labor Law § 195.3.

203.    Due to Defendants' violations of Labor Law § 195.3, Plaintiffs are entitled to recover from Defendants $100.00 for each work week that the violations occurred or continue to occur, or a total of $5,000.00, as provided for by Labor Law § 198(1)-d, reasonable attorneys' fees, costs, injunctive and declaratory relief.

## SEVENTH CAUSE OF ACTION
### UNTIMELY PAID WAGES
### UNDER THE NEW YORK LABOR LAW
(On Behalf of all Plaintiffs)

204.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

205.    Plaintiffs are a "manual worker" within the meaning of N.Y. Lab. Law § 190(4).

206.    As a manual worker, Defendants were required to pay Plaintiffs "not later than seven days after the end of the week in which the wages are earned." N.Y. Lab. Law § 191(1)(a)(i).

207.    A temporary deprivation of money to which Plaintiffs are entitled constitutes a tangible injury that is cognizable under Article III.

208.    With Defendants paying Plaintiffs every 14 days, they did not pay them for the first seven days they worked during each period within seven days at the end of that week, violating N.Y. Lab. Law § 191(1)(a)(i).

209.    For violating N.Y. Lab. Law § 191(1)(a)(i), Defendants are liable to Plaintiffs for interest and attorneys' fees and expenses.

EIGHTH CAUSE OF ACTION
UNLAWFULLY RETAINED GRATUITIES
UNDER THE NEW YORK LABOR LAW
(On Behalf of all Plaintiffs)

210.    Plaintiffs reallege every preceding allegation as if set forth fully herein.

211.    Defendants willfully violated the N.Y. Lab. Law § 196-d by unlawfully retaining a portion of the gratuities, by unlawfully remitting them to the managers, that should be remitted to Plaintiffs.

212.    Due to Defendants' violations of the Labor Law, Plaintiffs are entitled to recover from Defendants unlawfully retained gratuities, statutory liquidated damages, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Labor Law;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award for unpaid overtime under the Labor Law;

d.    An award for untimely paid wages under the Labor Law;

e.    An award for failing to provide the N.Y. Lab. Law § 195.1 Notice;

f.  An award for failing to provide the N.Y. Lab. Law § 195.3 Wage Statements;

g.  An award for unlawfully retained gratuities under the FLSA;

h.  An award of liquidated damages as a result of Defendants' Labor Law violations;

i.  An award of liquidated damages as a result of Defendants' willful FLSA violations;

j.  An award of pre-judgment and post-judgment interest;

k.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.  Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
        September 12, 2025

LIPSKY LOWE LLP

<u>s/ Douglas B. Lipsky</u>
Douglas B. Lipsky
Travis Pierre-Louis
420 Lexington Avenue, Suite 1830
New York, New York 10170
212.392.4772
doug@lipskylowe.com
travis@lipskylowe.com
*Counsel for Plaintiffs*